UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
        v.                          )
                                    )   Criminal Action No. 05-93 (RMC)
**SAQUAWN L. HARRIS,**              )
                                    )
        **Defendant.**              )
_____ )

## MEMORANDUM OPINION

In 2008 the Court sentenced Saquawn Harris to 78 months of incarceration for unlawful possession with intent to distribute 5 grams or more of cocaine base. At the time of sentencing, the statutory range for that offense was 5-40 years. That range has now been reduced to 0-20 years, with a corresponding shift in the guidelines' recommendation, and the First Step Act gives the Court discretion to modify its sentence accordingly. Mr. Harris moves for an exercise of that discretion. The Court will deny the motion.

### I. BACKGROUND

#### A. Facts

In March 2008 Mr. Harris plead guilty to one count of unlawful possession with intent to distribute 5 grams or more of cocaine base (crack cocaine), *see* 21 U.S.C. § 841(b), and one count of unlawful possession of a firearm by a felon, *see* 18 U.S.C. § 922(g). As part of the plea, Mr. Harris agreed that he was responsible for the distribution of 13.1 grams of crack cocaine. For its part, the government agreed to recommend a two-point downward adjustment for acceptance of responsibility and to not seek "any increase in [Mr. Harris'] base offense level" other than those already included in the plea. In the course of their negotiations, both parties understood that under the sentencing guidelines Mr. Harris faced (1) a base offense level of 24;

1

(2) a two-point upward adjustment for the gun; and (3) a two-point downward adjustment for his acceptance of responsibility, bringing his total adjusted offense level to 24.  Factoring in his category IV criminal history, Mr. Harris' guidelines range was expected to be 77-96 months.

After Mr. Harris entered his plea, the probation office drafted a Presentence Investigation Report (PSR) in preparation for sentencing.  As with the parties, it calculated a base offense level of 24 and a two-point upward adjustment for the gun.  However, the probation office also determined that two of Mr. Harris' prior convictions—for robbery with a dangerous weapon and for threatening to injure with a deadly weapon, both in Maryland—were felony crimes of violence.  These two felonies made Mr. Harris a "career offender" under the guidelines, automatically increased his criminal history category to VI, and automatically increased his base offense level to 34.  *See* United States Sentencing Commission, *Guidelines Manual*, §4B1.1(b) (2007).  His acceptance of responsibility brought his total adjusted offense level down to 32, but with a category VI criminal history his guidelines range was 210-262 months.

Upon review of the PSR, Mr. Harris moved to withdraw his guilty plea.  Although Mr. Harris' attorney was aware that his Maryland robbery conviction was a felony, neither he nor the government knew of the conviction for threatening to injure or its effect on sentencing.  In part this was because information regarding Mr. Harris' misdemeanor criminal record was missing from his file.  In part this was also because of a quirk of Maryland law:  although threatening to injure with a deadly weapon is labeled a misdemeanor, it is a misdemeanor with a sentence of up to 18 months, making it a felony under the guidelines.[1]

---

[1] Prior to pleading guilty, counsel for Mr. Harris asked him if he had been convicted of other felonies.  Mr. Harris, not understanding the legal distinction at play, truthfully answered that he had not.

The Court noted that Mr. Harris had agreed during his plea colloquy to accept the judgment of the Court regardless of whatever agreement he and the government otherwise reached. However, the Court also determined that sentencing Mr. Harris as a career offender, based on a mistake of law that neither his attorney nor the prosecutor were aware of, would "promote disrespect for law." Emergency Mot. to Reduce Sentence Pursuant to the First Step Act of 2018 (Mot.), Ex. A, Sentencing Tr. [Dkt. 63-2] at 24:25-25:1. The Court thus denied Mr. Harris' motion to withdraw his guilty plea but imposed a sentence "closer to what the defendant anticipated getting." *Id.* at 24:23-24. Mr. Harris received 78 months' incarceration on both counts, to run concurrently, with a 4-year term of supervised release on each count to run concurrently. Mr. Harris did not appeal and has not moved for post-conviction relief.

Mr. Harris was subsequently convicted in D.C. Superior Court on one count of conspiracy, one count of first-degree murder while armed, two counts of assault with intent to kill while armed, and related firearms charges. In November 2009 he received multiple consecutive sentences totaling 800 months' incarceration.

## B. Fair Sentencing Act and First Step Act

Previously, a person convicted of possessing with intent to distribute more than 5 grams of crack cocaine faced a mandatory minimum sentence of 5 years imprisonment and a 40-year statutory maximum. In 2010, Congress passed the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), Sections 2 and 3 of which eliminated the mandatory minimum for offenses involving fewer than 28 grams of crack cocaine and set the statutory maximum at 20 years. *Compare* 21 U.S.C. § 841(b)(1)(B) (2009), *with* 21 U.S.C. § 841(b)(1)(B) (2018). This change did not apply retroactively and so afforded Mr. Harris no relief.

In 2018, however, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). Under Section 404(b) of the First Step Act, "[a] court that imposed a

3

sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Id.* § 404(b). A "'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010." *Id.* § 404(a). In short, the First Step Act gives district courts the authority to retroactively apply reduced sentences for "the unlawful possession of five grams or more of crack cocaine with the intent to distribute it." *United States v. Mitchell*, No. 5-cr-110, 2019 WL 2647571, at *3 (D.D.C. June 27, 2019).

\* \* \*

Mr. Harris currently has a projected release date of February 11, 2070. He now seeks relief under Section 404(b) of the First Step Act. In addition to reducing his sentence, he asks the Court to run his federal sentence concurrent with his 800-month sentence from D.C. Superior Court. The government opposes. The matter is ripe for review.[2]

## II. ANALYSIS

A brief note on the applicable factors to be considered by the Court: The First Step Act makes clear that sentence reductions are within the district court's discretion. *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). The First Step Act does not make clear what factors should inform that exercise of discretion. To fill in this gap, other courts in this district have relied on the traditional sentencing factors found at 18 U.S.C. § 3553(a) as guideposts. *See United States v. White*, No. 93-cr-97, 2019 WL 3719006, at *25 (D.D.C Aug. 6, 2019); *Mitchell*, 2019 WL

---

[2] *See* Mot. [Dkt. 63]; Gov't's Opp'n to Def.'s Emergency Mot. to Reduce Sentence Pursuant to the First Step Act of 2018 (Opp'n) [Dkt. 69]; Reply to Gov't's Opp'n to First Step Act Mot. (Reply) [Dkt. 70].

2647571, at *7. The parties here do too. *See* Opp'n at 8; Reply at 3. The Court finds no reason to depart from this practice.

Mr. Harris' revised guidelines computation also merits discussion. As discussed previously, the parties initially believed Mr. Harris had a base offense level of 24 with a criminal history category IV, corresponding with a guidelines range of 77-96 months. The probation office determined that Mr. Harris was a career offender facing over 25 years incarceration; this bumped his offense level to 34 and his criminal history to category VI. With two points off for acceptance of responsibility, *see* USSG §4B1.1(b), his actual guidelines range was 210-262 months.

Applying the Fair Sentencing Act's revised penalties, Mr. Harris's offense would have come with a base offense level of 18. With a two-point upward adjustment for the gun, a two-point downward adjustment for acceptance of responsibility, and assuming a criminal history of category IV, his revised guidelines range, accepting the facts in his plea agreement, would have been 41-51 months. However, even with the revised penalties Mr. Harris would still have qualified as a career offender. Because the revised statutory maximum is now 20 years for his offense, *see* 21 U.S.C. § 841(b)(1)(C), Mr. Harris' base offense level would have been adjusted to 32 with a criminal history of category VI. Less two points for his acceptance of responsibility, his guidelines range would have been 168-210 months.

In his motion, Mr. Harris asks that the Court now ignore his career offender status because he does not qualify under the current standard. That is, when Mr. Harris was indicted in 2007, the definition of a "crime of violence" included a residual clause capturing "conduct that presents a serious potential risk of physical injury to another." USSG §4B1.2 (2007). Mr. Harris' misdemeanor in Maryland so qualified because he was convicted for repeatedly stabbing

5

another inmate with a homemade knife. That residual clause has since been removed, meaning that, other than convictions for certain specified crimes, a crime of violence conviction must have "as an element the use, attempted use, or threatened use of physical force." USSG §4B1.2(a) (2019). Mr. Harris argues that his conviction for threatening to injure does not include such an element because, under controlling Maryland precedent, "[a]s long as the defendant wears or carries the weapon with the requisite intent to harm someone, the crime is fully consummated," "even if no human being, other than the defendant himself, [is] anywhere within a ten-mile radius." *Sullivan v. State*, 132. Md. App. 682, 689 (Ct. Sp. App. 2000).

The First Step Act permits courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act were in effect *at the time*." First Step Act § 404(b) (emphasis added). This is a retrospective look and the Court will not consider subsequent changes to the guidelines not made retroactive in its analysis. Indeed, this comports with the Sentencing Commission's policy statement regarding amended guidelines ranges, which recommends courts "leave all other guideline application decisions unaffected." U.S.S.G §1B1.10(b)(1), p.s. This leaves Mr. Harris' guidelines range at 168-210 months.[3]

Conversely, Mr. Harris includes his 2009 Superior Court conviction in his revised criminal history calculation, placing him in category V. Mot. at 8. This would raise his guidelines range, without the career offender adjustment, from 41-51 months to 51-63 months; he asks the Court to sentence him at the upper end of this range. But this calculation is mooted

---

[3] In the abstract, sentencing Mr. Harris based on this residual clause might raise some concerns after *Johnson v. United States*, 135 S. Ct. 2551 (2015), which found a similar residual clause used as an element in a criminal statute void for vagueness. However, the Court notes that Mr. Harris was sentenced after *United States v. Booker*, 543 U.S. 220 (2005), meaning that his guidelines sentence was discretionary, not mandatory, and is "not amenable to a vagueness challenge." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017). It is also clear to the Court that Mr. Harris' conduct in the underlying misdemeanor was violent.

6

by application of the career offender provision, which automatically places Mr. Harris in criminal history category VI. More to the point, for the same reason as above, the Court finds it appropriate to leave in place the guideline application decisions made in 2008.

Even if he is treated as a career offender, Mr. Harris asks the Court to vary below the applicable guidelines range and cites a host of cases in which defendants, previously sentenced as career offenders, were sentenced otherwise because they no longer qualified. The government does not contest the Court's authority to vary in this manner. However, the Court has already varied downward in this case to an extent larger than Mr. Harris' examples. What Mr. Harris asks for is an even greater variance than he received before.

In its discretion, the Court will not reduce or otherwise modify Mr. Harris' sentence. The Court's reasoning under the § 3553(a) factors can be found in the sentencing transcript and holds true today. *See generally* Sentencing Tr., Ex. A, Mot. [Dkt. 63-2]. The Court sentenced Mr. Harris to 78 months, at the low end of his anticipated guidelines range of 77-96 months, because the Court declined to impose a higher sentence (210-262 months) as a career offender. That leniency in sentencing is all that the facts support.

### III. CONCLUSION

For the reasons stated, Mr. Harris' Emergency Motion to Reduce Sentence Pursuant to the First Step Act of 2018, Dkt. 63, will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: December 11, 2019

ROSEMARY M. COLLYER
United States District Judge